## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**GLORIA COLON MARRERO**,
    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL
SECURITY**,
    Defendant.

Civil No. 23-1582 (BJM)

## OPINION & ORDER

Gloria Colon Marrero ("Colon") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Colon contends the administrative law judge ("ALJ") failed to consider Colon's pain caused by fibromyalgia and her mental health impairment in the residual functional capacity ("RFC"). Docket No. ("Dkt.") 10. The Commissioner opposed. Dkt. 16. This case is before me by consent of the parties. Dkts. 1, 5. For the reasons set forth below, the Commissioner's decision is **REVERSED**.

## APPLICABLE LEGAL STANDARDS

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere

scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of

impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the Fifth and final Step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings.

On February 1, 2021, Colon filed an application for disability insurance benefits. Tr. 403. She alleged her disability onset date was June 12, 2020. *Id.* Colon was born in 1970. Tr. 403. She obtained a high school degree (Tr. 51), and previously worked as a manufacturing operator. Tr. 52. Her date last insured is December 31, 2025. Tr. 25. The Commissioner denied Colon's application for benefits initially, on reconsideration, and after a hearing before an ALJ. Tr. 403, 418, 23-37. The record before the Commissioner, which included medical evidence and Colon's self-reports, is summarized below.

***Treating Physicians***

**Dr. Oscar Quintero Serrano**

Colon started seeing Dr. Quintero on July 10, 2020. She presented symptoms of edema and pain in the lower extremities, chest pain, fatigue and shortness of breath. Tr. 136. Dr. Quintero ordered a venous doppler and arterial doppler. He oriented Colon as to a low salt diet. *Id.*

On July 13, 2020, Colon had a non-invasive study of the veins of the legs with color flow duplex scan and doppler waveforms analysis done. There was no evidence of deep or superficial venous thrombosis in both legs. However, there was severe deep and mild superficial venous insufficiency in both legs. Dr. Quintero recommended support socks. Tr. 125.

On July 21, 2020, Colon had a lower extremities arterial duplex and doppler study done. Tr. 120. The study reflected Colon had normal flow without evidence of pression gradient. It also found she had no small vessels disease in her legs. *Id.*

On August 5, 2020, Colon had a follow -up visit to discuss her cardiovascular studies. She complained of chest pains and palpitations. She felt moderate pain in her chest but was not taking any medication for it. Tr. 138. She appeared alert, active oriented and well hydrated. Tr. 139. She

had normal carotid pulses. Colon had a regular heart rate and rhythm. Dr. Quintero found she had clear auscultation bilaterally. There was edema in her legs. She did not have palpitations. *Id.*

On October 9, 2020, Colon had an echocardiogram done. Tr. 134. The left ventricle size, wall and systolic function were normal with an ejection fraction greater than 55%. The right ventricle is normal in size and function. The left and right atrium were normal in size and function. The aortic valve was trileaflet and appears structurally normal. There was no stenosis or regurgitation. The pulmonic valve was normal. There was a mild tricuspid regurgitation present. *Id.* She also saw Dr. Quintero on this day. Tr. 141. She stated feeling well and had no new complaints. She has no chest pain, shortness of breath or palpitations. *Id.*

**Dr. Francisco J. Morales Recio**

Colon saw Dr. Morales from July 3, 2012 through September 25, 2021. Tr. 144-78. Progress notes are largely illegible. It appears Colon had monthly appointments during 2020. Tr. 150-57.

On August 26, 2020, Colon presented with cervical pain, lumbar region pain, lower limb pain, foot discomfort, knee discomfort and edema in the lower extremities. Tr. 144. Dr. Morales stated Colon could sit for one hour at a time with rests. She also could stand or walk for one hour with rests. Tr. 145. Dr. Morales stated Colon can never lift and carry less than ten pounds. She also could not bend, squat, crawl, climb and kneel. Colon needed to take unscheduled breaks during an eight-hour workday. Colon can use her hands for gross manipulation for less than one hour in an eight-hour workday. She could use her fingers for fine manipulation for less than one hour in an eight-hour workday. She could reach overheard for less than one hour in an eight-hour workday. Dr. Morales estimated Colon would be absent from work more than four days per month. *Id.* Upon evaluation, Colon had clear lungs.

On March 22, 2021, Colon came in for an evaluation. She had clear lungs, and her physical exploration was normal. Tr. 342. Dr. Morales diagnosed Colon with degenerative cervical disc. *Id.*

On April 1, 2021, Colon had clear lungs, and her physical exploration was normal. Tr. 341. Dr. Morales diagnosed Colon with degenerative cervical disc. *Id.*

On May 3, 2021, Colon had clear lungs, and her physical exploration was normal. Tr. 340. Dr. Morales diagnosed Colon with degenerative cervical disc and fibromyalgia. *Id.*

On June 2, 2021, Colon had clear lungs, and her physical exploration was normal. Tr. 339. Dr. Morales diagnosed Colon with degenerative cervical disc and fibromyalgia. *Id.*

On September 25, 2021, Colon came in with pain. Tr. 343. She was diagnosed with leg edema and vertigo. *Id.*

**Parana Imaging Center**

On August 20, 2018, Colon had an x-ray of her left humerus. Tr. 200. It showed Colon had degenerative changes to the left AC joints. There was also calcific tendinopathy, which suggested overlying of the left humeral medial epicondyle attachment site of the common flexor tendon. On the same date, she also had images of her left shoulder taken. Tr. 201. It showed degenerative changes to her left AC joint. *Id.* Finally, there was an x-ray of her left forearm. Tr. 674. It showed calcific tendinopathy overlying the left humeral medial epicondyle. *Id.*

On June 21, 2019, Colon got an x-ray of her kidney, ureter and bladder ("KUB") because she presented with left lower quadrant pain. Tr. 206. At the left mid-pelvis, there were three round calcific densities that raised the possibility of distal ureteral calculi. The doctor recommended that a CT of the abdomen and pelvis be completed. *Id.*

On June 18, 2020, Colon got an x-ray of her right foot. Tr. 198. The x-ray showed Colon had a spur formation at the calcaneus mid and posterior plantar aspect. *Id.*

On September 30, 2020, Colon had an x-ray done of her cervical and lumbar spine. The cervical imaging showed the vertebrae to be of normal height and anatomically aligned. It also showed degenerative changes at the C5-C6 vertebras with spondylosis. Tr. 149. As to the lumbar imaging, it showed the vertebrae to be of normal heigh and anatomically aligned, and the intervertebral disc spaces appeared preserved. *Id.*

**Medical X-Ray Center**

On August 25, 2018, Colon had an MRI of her left shoulder. Tr. 202. It showed the rotator cuff had a bursal surface fraying of the supraspinatus with an underlying tendinosis. The labrum appeared within normal limits. There was no suspicious marrow signal identified. The periarticular soft tissues are also within normal limits. There was some subdeltoid and subacromial bursal fluid noted, which could be related to the mild bursitis. The biceps demonstrate normal signal intensity. Finally, in the soft tissues, there appeared to be a benign axillary lymph node. *Id.*

On December 16, 2020, Colon had an MRI of the lumbar spine. In L1/L2, there were disc herniation without canal stenosis or foramina narrowing. In L2/L3 and L3/L4, there were minimal posterior disc bulge with mild fact hypertrophy. In L5/S1, there were also mild facet hypertrophy present. Tr. 222.

**Dr. Lee Ming Shurn**

Dr. Ming, a rheumatologist, has been treating Colon since September 2018. Tr. 196.

On September 12, 2018, Colon stated she started experiencing fatigue, generalized myalgia, arthralgias, hyperalgesia, insomnia and anxiety for the last four months. Tr. 728. Colon was active and alert. She was in no acute distress and did not have any assisted devices. Tr. 729. She had multiple tender points and joints. She had pain in her left shoulder. She was diagnosed

with fibromyalgia, obesity, left shoulder tendinopathy and low vitamin D. She was prescribed neurontin, cataflam and skelaxin for pain management. Tr. 730.

On March 12, 2019, Colon complained of generalized pain, arthralgias (without joint swelling), morning stiffness, hyperalgesia, paresthesia, brain fog, non-restorative sleep, and anxiety. Tr. 723. She stated the pain worsens when doing activities of daily living. The pain improved with rest, but the anxiety worsened the symptoms. *Id.* Dr. Ming found her to be alert, active and oriented. She was not in acute distress and did not have any assisted devices. *Id.* She had multiple tender points and joints. She had pain in her left shoulder. *Id.* She was diagnosed with fibromyalgia, obesity, left shoulder tendinopathy and low vitamin D. She was injected with Lidocaine on her left shoulder. Tr. 724. On March 13, 2019, Dr. Ming stated Colon had fibromyalgia, low back pain, and generalized anxiety disorder. Tr. 196.

On June 25, 2019, Colon was symptomatic from her fibromyalgia. She continued suffering from insomnia despite treatment. She complained of right knee pain, which got worse when she stood for a long time. Tr. 716. She had multiple tender points and joints. *Id.* Colon was diagnosed with fibromyalgia, obesity and osteoarthritis. Tr. 717. The treatment plan was to increase the dose of neurontin. She was given celebrex and skelaxin for pain management. Dr. Ming suggested to consider bariatric surgery for weight loss. *Id.*

On October 15, 2019, Colon continued to be very symptomatic from her fibromyalgia. She presented with a depressed mood. She had been unable to work due to sever generalized pain. Tr. 709. She had not started dieting or exercising. Colon was counseled as to the importance of exercise in the chronic pain syndrome. *Id.* Dr. Ming wrote a medical excuse for Colon because she was unable to attend work from October 14 through October 16 due to her fibromyalgia. Tr. 379.

On February 25, 2020, Colon went for a follow-up visit. Tr. 702. Her main complaint was a generalized burning sensation, which was worse at night. Upon physical examination, Colon appeared active, alert oriented and in no acute distress. She had multiple tender points and joints. Colon was diagnosed with fibromyalgia, obesity and osteoarthritis. Tr. 703. Dr. Ming started her on Lyrica. Tr. 704.

On July 20, 2020, Colon went for another follow-up visit. Tr. 695. She complained of chronic bilateral swelling in her legs, which could be associated to possible lipedema. She was feeling depressed and anxious. She also complained of plantar fasciitis on the right side. Dr. Ming found Colon to be active, alert oriented and in no acute distress. She had multiple tender point and joints, bilateral lower leg non-pitting edema, plantar fasciitis on the right side. Tr. 695. Colon was diagnosed with fibromyalgia and lipedema. Tr. 697.

**Caribbean MSK and Rehab**

On July 24, 2019, Colon complained of left shoulder pain, which she rated at seven or eight level of intensity. Tr. 995. She also had pain in both hands, which she rated at eight or nine level of intensity. She described the pain as a burning sensation. She complained of pain in both knees, which she rated at five or six level of intensity. She felt the pain as pressure. Upon physical examination, the abduction and external rotation of her left shoulder was limited and painful. Palpation of the supraspinatus was painful. The carpometacarpal joint was tender to touch. Tr. 996. The right knee medial joint line was painful. Her ability to bend was limited and painful. She was diagnosed with adhesive capsulitis of her left shoulder, inflammation of the rotator cuff tendon, low back pain and prolapsed lumbar intervertebral disc. She was given an injection for her left shoulder and sent to physical therapy. *Id.*

On September 28, 2020, Colon went to Caribbean MSK and Rehab complaining of lower back pain, numbness, cramping and pain in her hands for the past five to six months. Tr. 235. She had a burning sensation in her thighs. She rated her lower back pain at an eight and said the pain happens more when she sits down. She rated the numbness in her hands and forearm at a seven or eight. The physical exam revealed her flexion was limited and painful, but extension was less limited and less painful. Her bilateral bending was limited and painful. The bilateral carpal compression test was negative. She could do a straight leg raise. Colon was diagnosed with low back pain, intervertebral disc displacement in the lumbar region, radiculopathy in the lumbar region, carpal tunnel syndrome in both hands and cervicalgia. *Id.* Colon was instructed to return as necessary and sent to physical therapy for her lower back pain. Tr. 236.

Colon had her initial therapy evaluation with Caribbean MSK and Rehab on October 1, 2020. Tr. 233. Colon had an active cognitive status, was cooperative, attentive and oriented. She could do functional activities of every day living with pain and moderate difficulty. Her mobility in bed was with pain and difficulty. She did not sleep well. She used a one-point cane and could walk twenty feet. She had regular dynamic foot tolerance, regular lying tolerance, regular sitting balance. Colon had lumbar hyperlordosis. She had poor muscular strength and inflammation in the sacral area. Tr. 334. Colon would be able to resume activities of daily living without difficulty.

On October 22, 2020, Colon had a follow-up visit for her physical therapy. Colon reported experiencing pain in the lower back, predominantly on the right side. The therapist stretched her hamstring and gastrocnemius. Colon was given a massage and ultrasound. Tr. 287. She tolerated the treatment well. *Id.*

On November 11, 2020, Colon did a motor nerve study, a sensory nerve study and an EMG study of her legs. Tr. 228-29. There was evidence of right-sided chronic L5-S1 polyradiculopathy.

Tr. 230. There was possible evidence of a left-sided chronic L5 radiculopathy. Finally, there was no conclusive evidence of peripheral neuropathy. *Id.*

On November 18, 2020, Colon had a motor nerve study, a sensory nerve study and an EMG study to screen whether she had carpal tunnel syndrome. Tr. 223. There was evidence of a right-sided moderate sensorimotor median neuropathy at the level of the wrist, which seemed consistent with carpal tunnel syndrome. There was evidence of a left-sided mild to moderate sensorimotor median neuropathy at the level of the wrist, which also seemed consistent with carpal tunnel syndrome. There was no evidence of a right or left sided C5-T1 radiculopathy. *Id.*

On November 19, 2020, Colon had a follow-up visit for her physical therapy. She was alert and cooperative. Colon presented with moderate muscle spasms in the lumbar area. The therapist stretched her hamstring and gastrocnemius. Colon was given a massage and ultrasound. Tr. 286. She tolerated the treatment well. *Id.*

On December 9, 2020, the physical exam revealed her flexion was limited and painful, but extension was less limited and less painful. Her ability to bend bilaterally was limited and painful, with the left side being worse. The bilateral carpal compression test was positive. She could do straight leg raises. Colon was diagnosed with low back pain, intervertebral disc displacement in the lumbar region, radiculopathy in the lumbar region, and carpal tunnel syndrome in both hands. Tr. 284. Colon was instructed to return as necessary. *Id.*

On February 3, 2021, Colon had lower back pain with a five or six intensity. Tr. 282. She has numbness, cramping and pain in the legs after long periods of standing. Colon wore a wrist splint at bedtime, which benefited her. Colon rated the numbness in her hands at a four or five level of intensity. She noticed the numbness more so in the mornings. She dropped objects. The physical exam revealed her flexion was limited and painful, but extension was less limited and less

painful. Her ability to bend bilaterally was limited and painful, with the left side being worse. The bilateral carpal compression test was positive. She could do a straight leg raise on the right side. Colon was diagnosed with low back pain, intervertebral disc displacement in the lumbar region, radiculopathy in the lumbar region, and carpal tunnel syndrome in both hands. Tr. 283. Colon was instructed to return as necessary. *Id.*

On May 13, 2021, Colon had lower back pain with a five level of intensity. Tr. 965. She also has neck pain with a five level of intensity. Colon rated the numbness in her hands at a four or five intensity. Colon wore a wrist splint at bedtime, which benefited her. She notices the numbness more so in the mornings. She drops things. The physical exam revealed her cervical flexion was limited and painful, but extension was less limited and less painful. Her cervical rotation was limited and painful, with the right side being worse. In terms of her lumbar spine, her flexion was limited and painful; extension was more limited and painful. Her ability to bend bilaterally was limited and painful, with the left side being worse. She had passive range of motion in both knees. The knee flexion was full and painless, but extension was full and painful. The bilateral knee medial collateral ligament was painful. *Id.* Colon was instructed to return as necessary. *Id.*

**Yaguez Clinic**

On February 28, 2019, Colon went to the emergency room because she had a headache, tremors, neck pain and numbness in both hands. Tr. 289, 291. She was sweating, had nausea and dizziness. Tr. 291. On February 28, 2019, Colon received a medical certification for a tension headache. Tr. 107. She was absent February 28 and March 1, 2019. *Id.*

**Mayaguez Medical Center**

Colon went to the emergency room on April 23, 2019. She reported having a cough, congestion and asthma for the past sixteen days. Upon examination, she had adequate lung sounds on both sides, but she did have mild wheezing. Tr. 303. All other physical and neurological exams were normal. *See* Tr. 302-03. Colon had a chest x-ray, which showed there was atherosclerosis of the aorta and multilevel degenerative spondylosis of the spine. The doctor diagnosed her as having asthma with acute exacerbation. Tr. 304. She was sent home with her condition improved. *Id.*

Colon went to the emergency room on May 7, 2021. Tr. 300. She presented with a cough, unspecified asthma with acute exacerbation, nasal congestion and hypertension. There is no further information of this visit.

***Psychiatric Treatment***

**Dr. Armando I. Caro Bonet**

On November 26, 2018, Colon began seeing Dr. Caro. Tr. 117. She reported having a history of depressed mood, lack of motivation, anxiety, and irritability. She stated nothing gave her pleasure. She had poor sleep, problems concentrating and poor self-esteem. *Id.* She claimed having chronic pain and was being evaluated by a rheumatologist. She stated her pain limits her daily activity and work. She appeared well-groomed, alert, coherent and logical. She had a neutral mood, plain affection. She denied suicidal or homicidal ideas. She also did not have auditory or visual hallucinations. Colon was oriented as to time, place and person. Her judgment was appropriate.

On January 14, 2019, she complained of daytime anxiety. Tr. 116. She often did not sleep well. She had a neutral mood, and appropriate and broad affect. *Id.* Colon demonstrated a normal communication style. She did not have any ideas of suicide or homicide. She did not have any

auditory or visual hallucinations. *Id.* She was diagnosed with major depressive disorder that is recurrent and moderate.

On March 11, 2019, she complained of daytime anxiety and having panic attacks. Tr. 114. She did not sleep well with medication. She had a neutral mood, and appropriate and broad affect. *Id.* Colon demonstrated a normal communication style. She did not have any ideas of suicide or homicide. She did not have any auditory or visual hallucinations. *Id.* She was diagnosed with major depressive disorder that is recurrent and moderate. Dr. Caro started her on Alprazolam for her anxiety and panic attacks. *Id.*

On May 6, 2019, Colon stated she has not been feeling well. She had daytime anxiety and panic attacks. Tr. 113. She was not sleeping well. She had been sad and tearful. She had a neutral mood and flat affect. Colon demonstrated normal communication style. She denied any presence of ideas related to suicide or homicide. She also did not have visual or auditory hallucinations. *Id.* Dr. Caro assessed Colon had major depressive disorder that was recurrent and moderate. The treatment plan was psychotherapy and pharmacotherapy. *Id.*

On July 29, 2019, Colon stated she has not been feeling well. She had daytime anxiety and panic attacks. Tr. 112. She was not sleeping well with the medication. She was stressed out because her job would be relocating her. *Id.* She had a neutral mood and flat affect. Colon demonstrated normal communication style. She denied any presence of ideas related to suicide or homicide. She also did not have visual or auditory hallucinations. *Id.* Dr. Caro assessed Colon had major depressive disorder that was recurrent and moderate. The treatment plan was psychotherapy and pharmacotherapy. *Id.* He diagnosed Colon with major depression and anxiety. *Id.* at 118, 197.

On October 23, 2019, Colon stated she has not been feeling well. She had daytime anxiety and panic attacks. Tr. 111. She was not sleeping well with the medication. She was stressed out

because she will probably be out of a job. *Id.* She had a neutral mood and flat affect. Colon demonstrated normal communication style. She denied any presence of ideas related to suicide or homicide. She also did not have visual or auditory hallucinations. *Id.* Dr. Caro assessed Colon had major depressive disorder that was recurrent and moderate. The treatment plan was psychotherapy and pharmacotherapy. Dr. Caro started her on Inderal. *Id.*

On March 4, 2020, Colon went to Dr. Caro and complained of having daytime anxiety and panic attacks. Tr. 110. She did not take Inderal because she could not remember what it was for. She continues to have chronic pain. Her rheumatologist prescribed her Lyrica. She had a neutral mood and flat affect. She demonstrated normal communication style. She denies having ides of suicide or homicide. She also denies the presence of auditory or visual hallucinations. Tr. 110. Dr. Caro assessed Colon had major depressive disorder that was recurrent and moderate. The treatment plan was psychotherapy and pharmacotherapy. Dr. Caro educated Colon about the use of medications. *Id.*

On May 27, 2020, Colon complained of having daytime anxiety and panic attacks. She is experiencing work related stress. She continued to be in chronic pain. She did not sleep well. She had a neutral mood and flat affect. She demonstrated normal communication style. She denied having ides of suicide or homicide. She also denied the presence of auditory or visual hallucinations. Tr. 109. Dr. Caro assessed Colon had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. Dr. Caro started her on Magnesium at bedtime. Dr. Caro also educated her about being evaluated for sleep apnea and temporomandibular dysfunction. Tr. 109.

On August 19, 2020, Colon complained of having episodes of daytime anxiety. Tr. 108. She continued to have chronic pain. She quit her job two months ago and did not sleep well. She

denied having lost interest in living or suicidal ideation. Tr. 108. She had a neutral mood, flat affect. She demonstrated normal communication style. She denied the presence of auditory or visual hallucinations. *Id.* Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. Dr. Caro increased her Clonazepam dose.

On December 23, 2020, Colon complained of having episodes of daytime anxiety and continues to have chronic pain. Tr. 246. She did not sleep well and had problems concentrating. Her mood was neutral; she had flat affect. Colon demonstrated normal communications style. She did not have auditory or visual hallucinations. Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. Additionally, Dr. Caro recommended evaluating Colon for medical cannabis.

On March 17, 2021, Colon reported having chronic pain and did not sleep well. She also continued having problems concentrating. Tr. 319. Her mood was neutral; she had flat affect. Colon demonstrated normal communications style. She did not have auditory or visual hallucinations. Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. *Id.*

On June 2, 2021, Colon reported having chronic pain and did not sleep well. She also continued having problems concentrating. Tr. 320, 322. Her mood was neutral; she had flat affect. Colon demonstrated normal communications style. She did not have auditory or visual hallucinations. Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. *Id.*

On September 1, 2021, Colon reported still having chronic pain and panic attacks. Tr. 398. Her mood was neutral; she had flat, congruent affect. Colon demonstrated normal communications

style. She did not have auditory or visual hallucinations. Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. Additionally, Dr. Caro recommended evaluating Colon for medical cannabis. *Id.*

On November 14, 2021, Colon She reported having chronic pain and panic attacks. Tr. 397. Her mood was neutral; she had flat, congruent affect. Colon demonstrated normal communications style. She did not have auditory or visual hallucinations. Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. Additionally, Dr. Caro recommended evaluating Colon for medical cannabis. *Id.*

On February 23, 2022, Colon reported still having chronic pain and did not sleep well. She also had panic attacks. Tr. 396. Her mood was neutral; she had flat affect. Colon demonstrated normal communications style. She did not have auditory or visual hallucinations. Dr. Caro assessed she had major depressive disorder that was recurrent and moderate. The plan was psychotherapy and pharmacotherapy. *Id.*

### Procedural History

In a disability report dated February 9, 2021, Colon claimed the following conditions: C5-C6 degenerative disc disease with spondylosis, fibromyalgia, carpal tunnel syndrome, panic attacks, depression, L1-L2 herniated discs, L2-L5 bulging discs, L5-S1 chronic radiculopathy and venous sufficiency. Tr. 593. She claimed her conditions caused her pain. *Id.* She took Alprazolam, Escitalopram for anxiety. She took magnesium, metaxalone and neurontin for her pain. She took melatonin for insomnia, pepcid for gastritis and propranolol for tachycardia. Tr. 596.

In a function report dated February 18, 2021, Colon stated she was experiencing pain in her hands which limited her ability to engage in work-related activities because she had difficulty maintaining a firm grip on objects. Tr. 80. She also alleged she was limited in her mobility because prolonged walking induced fatigue and dizziness. *Id.* She was experiencing numbness in her feet and swelling in her legs. *Id.* Her daily activities include getting up, eating breakfast, sitting down and resting. Her husband helps her shower and feeds her. She then lays down and watches TV. Tr. 81. Before her conditions began, she was able to do everything. She cannot sleep without her medication. She alleged to need assistance to dress herself, bathe herself, care for her hair, and shave. She cannot tolerate all foods because of the medications. She also needs help to sit down in the toilet. Tr. 81. She needs to be reminded to attend to her needs and personal care because she spends a lot of hours in bed. Tr. 82. She also requires reminders for taking her medication. Colon cannot make her own meals; her husband cooks and feeds her because she does not have strength in her hands. She also cannot do house and yard work and needs help to do everything. *Id.* She cannot do house or garden chores because of her multiple pains and aches. Tr. 83. She leaves the house only to go to doctors' appointments. She usually travels as a passenger in a car. She cannot leave her house alone because of her anxiety, loss of balance and pain. She does not do any shopping. Her husband or a family member goes shopping. She is not capable of paying bills, counting change, maintaining a checking account or using a checkbook. Her husband oversees all the finances. *Id.* Since her conditions, she feels anxious and forgets things when administering her money. Tr. 84.

Her hobby is watching TV and since her conditions, all she does is watch TV. Tr. 84. She does not spend time with other people, and she does not visit any place regularly. She needs to be reminded to go places, but she also does not go anywhere. She needs to be accompanied when she

goes out. *Id.* Her social activities have not changed since her conditions because she does not go out. Tr. 85.

She alleged her ability to lift, squat, bend over, stand, reach, walk, sit down, kneel, go up or down stairs, vision, memory, completing tasks, concentrating, understanding, following instructions, and using her hands have been affected since her conditions. Tr. 85. Specifically, she stated not being able to lift any weights, cannot stand for prolonged periods of time or go up the stairs. She also cannot sit down for long periods of time, cannot kneel down or do anything because of her pain. She forgets things and cannot see very well. *Id.* She can only walk for a couple of minutes and has to rest for a couple of minutes before walking again. She does not know how long she can pay attention. She has trouble following written instructions and cannot follow oral instructions because she cannot concentrate. Tr. 85. She does not have any issues with anyone. Tr. 86. She has never been laid off or suspended. She handles stress with medication. Changes in her routine trigger a great deal of stress and anxiety. She is afraid of not having money to pay for her medications. She uses a cane and glasses, which were prescribed by a doctor. *Id.*

She takes medication for her conditions that causes side effects. Tr. 87. She takes alprazolam, escitalopram, neurontin and metaxalone. The alprazolam causes difficulty concentrating, in speech and fatigue. The escitalopram makes her tongue tied, drowsy and gives her acidity in her stomach. The neurontin makes her drowsy, dizzy, gives her headaches, gastritis and makes her weak. Finally, the metaxalone gives Colon an upset stomach, and makes her dizzy and nervous. Tr. 87.

In a pain description questionnaire dated February 18, 2021, Colon stated she has pain all over her body and that the pain is acute and throbbing. Tr. 88. The pain gets worse when she moves. She feels pain every day and at all hours. The pain has gotten worse during the past year.

She takes the following medications to treat her pain: magnesium, alprazolam, escitalopram, propranolol, neurontin, metaxalone and melatonin. She stated the magnesium, the metaxalone and melatonin have moderate effectiveness; the alprazolam, neurontin and escitalopram have minimal effectiveness. Finally, the propranolol calms her down. Tr. 88-89. Other than the medications, she used injections that helped her a little. Tr. 90. The pain limits her because she cannot do house chores, cannot go out alone to run errands and needs to be accompanied all the time. She needs help in cooking and bathing. She gets fatigued by standing for long periods of time. She had to stop working. Tr. 90. She does not get a lot of sleep and needs medication. Since her pain started, she has lost fifteen pounds. She is depressed all the time due to her pain. *Id.*

On April 5, 2021, Colon was evaluated by Dr. Fernando Torres Santiago, an internist, per the request of the Disability Determination Program. Tr. 945. Colon appeared alert and well oriented. She was obese and used a walking cane in her right hand. However, she did not limp; she walked with a rigid spine. Tr. 947. Dr. Torres performed the Phalen and Tinel test for carpal tunnel and it was positive. Tr. 948. She has some varicose veins, mild to moderate bilateral ankle swelling. *Id.* Dr. Torres's diagnostic impressions were that she had benign arterial hypertension, cervical and lumbar spondylo-arthropathies, bilateral carpal tunnel, cervical degenerative disc disease at C5-C6 with spondylarthritis, lumbar degenerative disc disease with L5-S1 bilateral polyradiculopathy. She had severe deep and mild superficial venous insufficiency. Finally, she had chronic major depressive disorder.

On April 8, 2021, Dr. Jose Gonzalez-Mendez initially reviewed Colon's alleged physical medical impairments. 404-417. Dr. Gonzalez stated Colon could occasionally lift and/or carry twenty pounds and could frequently lift and/or carry ten pounds. Tr. 413. Colon could stand and/or walk about six hours in eight-hour workday; she could also sit (with normal breaks) for a total of

six hours in an eight-hour workday. Tr. 413-14. She could push and/or pull with only the limitation set for lifting and carrying. She could climb ramps/stairs, and balance. Tr. 414. She could frequently climb ladders, ropes and scaffolds, frequently crouch, and frequently crawl. *Id.* She did not have manipulative limitations, visual limitations, communicative limitations or environmental limitations. Tr. 414-15. Dr. Jennifer Cortes reviewed Colon's mental medical impairments. Tr. 411. Dr. Cortes stated Colon had mild limitations in understanding, remembering or applying information. She also had mild limitations in interacting with others; mild limitations in concentrating, persisting or maintaining pace; and mild limitations in adapting or managing herself. *Id.*

In a second disability report dated May 13, 2021, Colon claimed there was a change in her conditions because her body pain had increased since February 2021. Tr. 620. She claimed to need help putting on her shoes due to the pain. Tr. 624. She also had trouble getting dressed and could not brush her hair. She could not do household chores. She felt her legs burning. She cannot walk a lot and must sit down. When she does sit down, she cannot get up quickly because of her leg and back pain. She had trouble sleeping due to the pain and anxiety. She feels anxious when there are other people around, and sad.

In another pain description questionnaire dated June 7, 2021, Colon reported having profound and acute sensation of pain that encompassed her body. Tr. 93. She stated the pain is most agonizing in her lower back, neck, legs and the soles of her feet. Colon states pain is persistent, throbbing and has a searing quality. Her pain increases when she maintains a static posture for an extended period or when she engages in repetitive exertion or motion. Additionally, an abrupt fluctuation in temperature exacerbates the sensation of pain. The pain is persistent throughout the day and the entire week. It is particularly worse in the mornings and at night. In the

twelve months prior to the questionnaire, Colon states the pain had become intolerable, which has resulted in significant limitations and impairments. She takes the following medication: neurontin, metaxalone, famotidine, escitalopram, mirtazapine, alprazolam, lorazepam, losartan, vitamin D, propranolol. She states the metaxalone, famotidine, mirtazapine and propranolol have moderate effectiveness; the alprazolam, neurontin and escitalopram have minimal effectiveness. Tr. 93. In addition to the medications, she goes to physical therapy, therapeutic massage, and gets injections. She also uses an adjustable wrist brace, a cane for support and ointments. However, she claimed these other methods have not been effective in managing her pain. Tr. 94. The pain limits her ability to do domestic chores, to independently provide for her needs and to have fun at social activities. The pain further influences her emotional state and hampers her capacity to derive pleasure from previously enjoyable pursuits. It has also limited her ability to engage in gainful employment. She cannot achieve a restful sleep and needs to take medication in order to sleep. She also has a diminished appetite, which resulted in her losing fifteen pounds. Tr. 94. She constantly has a sense of unease because of the pain, which leads to feelings of depression. The pain renders her incapable and hinders her ability to express her true self. *Id.* Finally, as a result of her pain, she needs assistance in various aspects of her daily activities and is reliant on other people. Tr. 95.

In a second function report dated June 7, 2021, Colon stated that the severity of her condition and intense pain increased and she needs complete assistance of another individual. Tr. 96. Her pain is insurmountable, and the combination of weariness and emotional distress severely impairs her physical and cognitive capacities. She cannot maintain a stationary position for an extended period of time while simultaneously exerting force or engaging in repetitive or abrupt motions. She experiences leg swelling, hand weakness and persistent dizziness. Additionally, she experiences agony, despair and a perceived lack of attention and tolerance, which contributes to

her feeling overwhelmed and incapable of managing the demands and obligations associated with work. Tr. 96.

On a typical day, she wakes up and waits for her body to become responsive and for the discomfort to subside so that she can begin her daily activities. Tr. 97. After that, she eats breakfast and takes her medicine. Her husband helps her with her personal hygiene and grooming process. Then she watches television while trying not to exert any effort in order to endure any discomfort that may arise. Before her conditions, she was able to engage in employment, fulfill family responsibilities, engage in physical activity and manage her household. Her pain also affects the quantity and quality of sleep. She relies on medicine to be able to sleep. She needs help dressing herself because she cannot raise her arms or legs. She needs help bathing herself because she cannot bend over and raise her legs. She also cannot care for her hair because she is unable to raise her hands or exert physical strength to care for her hair. It is hard for her to shave because she has trouble bending over and standing for extended periods of time. She has a poor appetite and does not have the strength or desire to eat. It is hard for her to sit down and get up when she is using the toilet. Tr. 97. She requires motivation and support to manage her personal care as she is restricted to a sedentary position. Tr. 98. She needs to be reminded to take her medications. She also needs help classifying the medicines because she has difficulty remembering what they are for. Her lack of focus and memory has resulted in confusion regarding the appropriate timing and dosage of the medications. She does not make her own meals because her ongoing pain and diminished muscular capacity in her hands and lower extremities impede her ability to lift and use kitchen pots. She is also at risk of getting burned. Her husband is responsible for making the meals. She is capable of providing limited assistance in house work and yard work, but requires a significant amount of time to accomplish it. This in turn makes her anxious because she is unable to perform tasks as she

did before. She cannot do housework because she lacks strength in her hands and has edema in her lower extremities. She also experiences pain in her back, neck, and feet. Tr. 99.

Colon does not leave the house often. Tr. 99. She only goes to doctors' appointments. She does not leave the house because it makes her very anxious and exacerbates her pain. She cannot leave her house alone because of the challenges to her physical mobility and the pain. She also does not drive because of her physical aches and pains, mental health issues and emotional instability. She does not do any shopping. Her husband or someone in her immediate family does it because Colon cannot spend long periods of time outside her home and she has difficulty standing for long periods of time or being in a crowded place.

Colon claims she is not capable of paying her bills, counting change, maintaining a checking account and using a checkbook. She stated her pain does not allow her to focus on effectively handling financial matters. Tr. 99. Since her conditions began, she finds it difficult to focus on things and has lapses in memory. Tr. 100.

She watches TV on a daily basis for about four hours. Tr. 100. She does not derive pleasure from watching TV because of her persistent pain. She does not spend time with other people. She only leaves the house to go to doctors' appointments or fulfilling personal obligations. *Id.* She has a good relationship with her family, neighbors, and others. However, she does not spend time or enjoy social activities with others as a result of her constant pain. Tr. 101.

Colon claims she has difficulty lifting items, squatting, bending over, standing, reaching, walking, sitting down, kneeling, going up or down the stairs, completing tasks, concentrating, understanding, following instructions and using her hands. Tr. 101. She also has difficulty with her vision. Specifically, she has difficulty standing for extended periods of time because her legs swell up. She cannot sit for long periods of time because of her back pain. She has restricted range

of motion that affects her ability to bend and kneel. She suffers from physical exhaustion, which induces a depressive and anxious state of mind that interferes with cognitive functioning. She has memory lapses and is in constant pain. Tr. 101. She can walk for three to four minutes before having to rest. She rests for a minimum of three minutes before starting to walk again. She can only pay attention for about three minutes. She cannot finish activities such as a conversation, a chore, reading or watching a movie. She can follow written instructions with some difficulty if they are not long. She can follow oral instructions if they are short and given with pauses in between because she has difficulty with attention and concentration. She does not have issues dealing with authority figures. Tr. 102. She has never been laid off or suspended from work because she had problems dealing with people. She manages her stress and anxiety with medications. Any changes in her routine triggers stress and anxiety; she depends a lot on her husband and family.

Colon experiences high levels of anxiety when she is in a crowded environment. This influences her in not wanting to leave her home. She is also apprehensive about going on extended journeys in a car. When her medicine does not work, she gets panic attacks. Tr. 102. Colon uses a cane and glasses most of the time. She takes the following medication: alprazolam, escitalopram, neurontin, and metaxalone. Tr. 103. She suffers side effects from these medications. She has difficulty concentrating, difficulty talking and fatigue from alprazolam. She becomes tongue tied and gets stomach acidity from escitalopram. She has dizziness, drowsiness and gets gastritis from neurontin. Finally, she gets an upset stomach, dizziness and nervousness from metaxalone. Tr. 103.

On June 28, 2021, Dr. Vicente Sanchez reviewed Colon's medical file at the reconsideration level. Tr. 419-37. He reached the same conclusions as Dr. Gonzalez-Mendez with

the exception that Dr. Sanchez found Colon could only stand for 4 hours out of an eight-hour workday. Tr. 433. Dr. Annette De Paz-Ortiz reviewed Colon's psychological medical file. Tr. 431. She reached the same conclusions as Dr. Jennifer Cortes. Tr. 431.

In a third disability report dated July 21, 2021, Colon claimed there was a change in her conditions because her body pain had increased so much she could barely walk or hold things. Tr. 641. She claimed to need help putting on her shoes due to the pain. Tr. 645. She also had trouble getting dressed and could not brush her hair because her arms hurt. She could not do household chores. She felt her legs burning. She cannot walk a lot and has to sit down. When she does sit down, she cannot get up quickly because of her leg and back pain. She had trouble sleeping due to the pain and anxiety. She feels anxious when there are other people around, and sad. She would wake up numb. She feels very anxious and like she is dying. *Id.*

Colon's claim was initially denied on February 1, 2021, with a finding that she could perform other work given her age, education and residual function capacity. Tr. 403-16. Colon requested reconsideration claiming her pain had increased in intensity since February 2021 and submitting additional evidence. Tr. 420, 449. Colon's claim was denied on reconsideration on June 28, 2021, affirming the initial determination. Tr. 418-37.

A hearing was held via video conference on March 10, 2022, before ALJ Livia Morales. Tr. 44-70. Colon did not claim new conditions or changes in her existing ones.

Colon testified that she used to work as manufacturing operator until June 12, 2020. Tr. 51-52. She inspected products and packed them in boxes. Tr. 52. During her workday, she would be standing about 60% of the day. *Id.* She carried boxes that weighed 50 lbs. Colon was fired from her job in July 2021. However, she was on sick leave from her job before that. Tr. 54. Because she was on sick leave, Colon was not able to work. *Id.*

She stopped working because she started getting a lot of pain in her body. Tr. 53. She complained of having fibromyalgia. She testified that she has pulsating pain in her arms. She drops things all the time, and her legs go numb. She cannot stand very long because she gets throbbing pain in her legs and swelling. *Id.* She also gets anxiety attacks and chest pain. Tr. 55. Colon takes neurontin and skelaxin to manage her pain. However, these medications did not help with the inflammation she had in her arms and legs. Tr. 56-57. The medications give her gastritis and make her dizzy and nauseous. Tr. 57. Colon has gone to physical therapy and had injections. *Id.* Despite treatment, Colon still has inflammation and pain. *Id.* She did feel a little better for a couple of days but she had pain every day. *Id.*

Colon testified her conditions affect her ability to stand and walk. She can walk for about fifteen minutes before she has to stop and rest. Tr. 58. She can stand up alone if she does it slowly and calmly and holding onto something. *Id.*  She has been using a cane since 2021, which she stated was prescribed by Dr. Francisco Morales. *Id.*; Tr. 62. Colon stated Dr. Morales told her to use the cane so that she could walk better and not fall. She states she can walk only a block using her cane. Tr.63. Her condition also limits how much she can carry. Colon can only carry about five pounds. Tr. 58. She also testified not being able to lift anything or hold items in her hands for very long. She also has trouble opening things. Tr. 59.

Colon testified she was in treatment for her anxiety. *Id.*  She was taking medications to treat her anxiety. The medications cause her to have nausea, dizziness, and drowsiness. Her conditions affect her emotionally because she gets frustrated from all the pain. Tr. 60. Colon testified her conditions affect her ability to get dressed, bathe and put on clothes. *Id.* She needs help from her husband. She stated the pain made her fatigued. On a normal day, Colon lays down

or sits in her recliner. She watches TV. Colon needs to keep her legs raised to help ease the pain, but she still gets cramps and her legs fall asleep. Tr. 61.

Vocational expert ("VE") Joey Kilpatrick testified that Colon's small products assembler I's job was a Specific Vocational Preparation ("SVP") of two, light, but medium as Colon said to have performed it. Tr. 64. The ALJ asked the VE if a person with the following limitations could perform Colon's past work: limited to light work, except she can walk and stand for four hours in an eight-hour day. She can climb ramps and stairs, ladder, ropes or scaffolds frequently. She can balance, stoop, kneel, crouch, and crawl frequently. The VE answered that such a person could not perform Colon's job as a small products assembler I. Tr. 64.

The ALJ next inquired if a person with the same age, education (at least high school education and part university education), and vocational experience as Colon could do any other job in the nation on a sustained basis. The VE answered that such a person could perform other work in the national economy, such as a mail order, an information clerk, and a shipping and receiving weigher, all SVP of two.  Tr. 64-65. The ALJ asked if a person could perform the listed jobs if she had the same limitations, but she could handle and finger with both hands frequently; can never climb ladders, ropes or scaffolds; can stoop, kneel, crouch and crawl occasionally; can climb ramps and stairs occasionally; can never be exposed to unprotected heights; and can be exposed to moving mechanical parts and operating a motor vehicle. The VE answered that such a person could perform any of the listed jobs. Tr. 65. The ALJ next inquired if the person could perform the listed jobs if that person were limited to sedentary jobs. The VE answered that such a person could not perform any of the listed jobs. *Id.* Finally, the ALJ asked what was the maximum that a person could be off task without losing work. The VE replied a person could be off task for five percent of the eight hours in addition to the regularly scheduled breaks. *Id.*

Colon's counsel asked the VE whether a person with the same limitations the ALJ presented in the first hypothetical but has the ability to do fine and gross manipulation on an occasional basis could perform the jobs of a mail order, an information clerk, and a shipping and receiving weigher. The VE stated she could not perform those jobs. Tr. 823-24.

Colon's counsel also asked the VE whether a person with the same limitations the ALJ presented but, in the four hours she could stand and walk, she needs to use a cane, could perform the jobs of a mail order, an information clerk, and a shipping and receiving weigher. The VE stated she could not perform those jobs. Tr. 66.

The ALJ clarified whether a person could perform those jobs if the person needs a cane to walk but could walk a block or more. Tr. 66. The VE stated she could perform the listed jobs. Tr. 67.

On August 3, 2022, the ALJ found that Colon was not disabled under sections 216(i) and 223(d) of the Act. Tr. 17-43. After determining Colon meets insured status requirements through December 31, 2025, the ALJ made the following findings at Steps One through Five:

(1) Colon had not engaged in substantial gainful activity during the period of her alleged on-set.

(2) She had the following severe impairments: lumbar spine disorder with radiculopathy, cervical spine disorder, bilateral carpal tunnel syndrome, bilateral ankle degenerative joint disease, fibromyalgia, obesity and chronic venous insufficiency. (20 CFR 404.1520(c)).

(3) She did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(4) She retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with additional limitations. She can stand and/or walk for four hours in an eight-hour workday. She can frequently handle and finger with her bilateral upper extremities. She can frequently balance; occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. She can frequently work around moving mechanical parts, frequently operate a motor vehicle and never work at unprotected heights.

(5) Additionally, as per her age, education, work experience, and RFC, Colon could also perform jobs that existed in significant numbers in the national economy.

The Appeals Council denied review, Tr. 1-9, and this action followed.

## DISCUSSION

Colon argues the ALJ failed to consider Colon's pain due to fibromyalgia and her mental health impairment in the RFC. Dkt 10 at 17-20. The Commissioner argues Colon's RFC is supported by substantial evidence. Dkt. 16 at 5.

An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982).

Colon first argues the ALJ failed to consider that Dr. Ming diagnosed her with fibromyalgia because of the generalized pain she reported and that she did not improve with medication. Dkt.

10 at 16. However, the ALJ considered Dr. Ming's progress notes, and Colon's self-reported symptoms, including that she suffered from pain. *See* Tr. 32 ("[Colon's] medically determinable impairments could reasonably be expected to cause symptoms prior to the date last insured; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."); *see also* Tr. 32-33 ("[A]lthough she alleged debilitating pain and considerable physical functional limitations, her longitudinal diagnostic testing, while showing degenerative disc disease and lumbar radiculopathy, did not show marked spinal canal stenosis, foraminal narrowing, nor nerve root impingement."). Nonetheless, the ALJ accurately explained that Colon had conservative musculoskeletal treatment consisting of medication and physical therapy, and in terms of her carpal tunnel, Colon also received conservative treatment consisting of wrist splints. Tr. 33; *see* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability… there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…"). After considering the medical evidence of record, the ALJ found that "considering the foregoing factors, as well as the impact of the claimant's fibromyalgia pain, obesity and venous sufficiency, she is restricted to performing light exertional work, with reduced standing and/or walking, and postural, manipulative and environmental limitations." Tr. 35. This finding is supported by substantial evidence.

Colon next argues the ALJ erred when she did not consider Colon's mental health impairments in the RFC because she found her depression was not severe. Colon is correct. An ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe,' …

when [the ALJ] assess[es] [the claimant's] [RFC]." § 404.1545(a)(2). It is "simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work." *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1127 (1st Cir. 1986).

Thus, in assessing a claimant's ability to work, "[i]t is reversible error for an ALJ not to consider a claimant's non-severe impairments in conjunction with her severe impairments ... when formulating her RFC." *Smith v. Saul*, No. 18-cv-1086-PB, 2019 WL 5957294, at *3 (D.N.H. Nov. 13, 2019); *see also Morse v. Colvin*, No. 14-cv-18-LM, 2015 WL 1243169, at *9 (D.N.H. Mar. 17, 2015) (requiring the ALJ to address non-severe impairments when assessing RFC); *Forni v. Barnhart*, No. 05-cv-406-PB, 2006 WL 2956293, at *8 (D.N.H. Oct. 17, 2006) (reversing the Commissioner's denial of benefits and remanding because, after the ALJ identified the claimant's depression as a non-severe mental impairment at step two, the ALJ "completely (and improperly) dropped [claimant's] depression from his analysis, thereafter analyzing only the effects of asthma and carpal tunnel on [claimant's] RFC").

At Step Two, the ALJ identified Colon's depression as a medically determinable, non-severe mental impairment. Tr. at 27-28. She then noted that"[t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment .... The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." Tr. at 28. The ALJ did not, however, conduct the analysis at Step Four. The ALJ only stated "[a]s the claimant does not have a severe mental impairment, the residual functional capacity assessment does not contain mental limitations." Tr. 35. An ALJ does

not meet the requirement of 20 C.F.R. §1523[1] merely by finding that an impairment is not severe either alone or in combination with other impairments but must actually address non-severe impairments when assessing an RFC. *See Stephenson v. Halter*, No. Civ. 00-391-M, 2001 WL 951580 (D.N.H. Aug. 20, 2001).

The ALJ did note that Dr. Cortes and Dr. De Paz found Colon "had mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself." Tr. 34. However, the ALJ failed to discuss how her treating psychologist's, Dr. Caro, progress notes did not show limitations. *Cf. Martes v. Commissioner of Social Security*, 344 F. Supp. 3d 750, 768 (S.D.N.Y. 2018) (finding ALJ properly discussed treating phycologist's opinion concerning functional limitations when determining claimant's RFC). As such, the ALJ committed reversible error by failing to discuss Colon's depression in combination with her other determinable impairments at Step Four. *See* §404.1545(a)(2). Accordingly, I reverse the ALJ's decision and remand the case for consideration of whether – in light of Colon's combined medically determinable, severe and non-severe mental and physical impairments – her RFC would allow her to perform that exist in significant numbers in the economy. In doing so, I express no opinion as to what should be the outcome of that determination.

## CONCLUSION

---

[1] "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c).

For the foregoing reasons, the Commissioner's decision is **REVERSED.** Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of September 2024.


S/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge